**16-2097**

# United States Court of Appeals for the Federal Circuit

NEW WORLD INTERNATIONAL, INC. AND NATIONAL AUTO PARTS, INC.,

Plaintiffs-Appellants,

v.

FORD GLOBAL TECHNOLOGIES, LLC.,

Defendant-Appellee,

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS IN CASE NO. 3:15-CV-01121
JUDGE BARBARA LYNN

**REPLY BRIEF FOR THE APPELLANTS**

Robert G. Oake, Jr.
Texas Bar No. 15154300
Oake Law Office
825 Market Street, Suite 250
Allen, Texas 75013
Telephone: 214.207.9066
rgo@oake.com

Attorney for Plaintiffs-Appellants

October 21, 2016

**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

New World International, Inc., et al. v. Ford Global Technologies, LLC
16-2097

CERTIFICATE OF INTEREST

Counsel for Plaintiffs-Appellants certifies the following:

1. The full name of every party or amicus represented by me is:

New World International, Inc. and National Auto Parts, Inc.

2. The real name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

None

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

United Commerce Centers, Inc.

4. The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court (and who have not or will not enter an appearance in this case) are:

None

October 21, 2016

/s/ Robert G. Oake, Jr.
Robert G. Oake, Jr.
Attorney for Plaintiffs-Appellants

TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ………………………………… iii

REPLY ARGUMENT ……………………………………………… 1

I. The District Court Erred in Dismissing the Complaint for Lack of Personal Jurisdiction because Specific Personal Jurisdiction Exists over FGTL .................................................. 1

A. The Continuing Obligations of FGTL in the Exclusive License Agreement are Sufficient to Establish Personal Jurisdiction over FGTL under this Court's Case Law 1

B. FGTL's Continuing Enforcement Obligations in the Exclusive License Agreement with LKQ Establish Personal Jurisdiction........................................................ 8

C. New World's Personal Jurisdiction Argument is Solidly Supported by Supreme Court and Federal Circuit Authority......................................................................... 11

D. The Reconsideration Motion was Improperly Denied 14

II. The District Court Abused its Discretion in Declining New World's Motion to Amend the Complaint because there was no Undue Delay ………………………………………….. 14

A. There was no Undue Delay by New World .................. 14

B. The Proposed Amended Complaint is not Futile ............... 18

CONCLUSION AND RELIEF SOUGHT ………………………… 48

CERTIFICATE OF COMPLIANCE ……………………………….. 22

CERTIFICATE OF SERVICE

TABLE OF AUTHORITIES

Page(s)

*Akro Corp. v. Luker*
45 F.3d 1541 (Fed. Cir. 1995) .................................. 2, 3, 5, 6, 7, 9, 12

*Avocent Huntsville Corp. v. Aten Int'l Co.*
552 F.3d 1324 (Fed. Cir. 2008) .................................. 11, 18, 19

*Breckenridge Pharmaceutical v. Metabolite*
444 F.3d 1356 (Fed. Cir., 2006) ............................... 2, 4, 7, 8, 9, 10, 18

*Briddle v. Scott*,
63 F.3d 364 (5th Cir. 1995) …………………….. 15

*Burger King Corporation v. Rudzewicz*,
471 U.S. 462 (1985) ……………………………. 1, 4

*Daimler AG v. Bauman*,
134 S. Ct. 746 (2014) ……………………………. 13, 14

*Dussouy v. Gulf Coast Investment Corp.*
660 F.2d 594, 598 (5th Cir. 1981) ........................ 15

*Ford Global Technologies, LLC v. New World Int.*
Case Number 2:15cv10394 (E.D. Mich. 2015) .... 10

*Freeman v. Continental Gin Co.*
381 F.2d 459 (5th Cir. 1967) ................................... 15

*Genetic Implant Sys., Inc. v. CoreVent Corp.*
123 F.3d 1455 (Fed. Cir. 1997) .................................. 3, 5, 6, 7, 13

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
564 U.S. 915 (2011) ……………………………. 13, 14

*Google Inc. v. Rockstar Consortium U.S. LP*
No. C 13-5933 (N.D. Cal., August 20, 2014) ........... 16

*Hildebrand v. Steck Mfg. Co.,*
279 F.3d 1351 (Fed. Cir. 2002) ........................... 2

*Joseph v. Apache Stainless Equipment Company*,
1999 WL 301703 (E.D. La. May 12, 1999) ........... 7

*Lumber Liquidators Leasing, LLC v. Sequoia Floorings, Inc*.
No. 3:13-CV-313 (E.D. Va., January 24, 2014) ........... 7

*Radio Systems Corp. v. Accession, Inc.*
638 F.3d 785 (Fed. Cir. 2011) ...................................... 19

*Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.,*
148 F.3d 1355 (Fed. Cir. 1998) ............................ 2

*Rosenzweig v. Azurix Corp*.,
332 F.3d 854 (5th Cir. 2003) ............................ 15

*Silent Drive, Inc. v. Strong Industries, Inc.,*
326 F.3d 1194 (Fed. Cir. 2003) ............................ 19

*Smith v. EMC Corps*,
393 F.3d 590 (5th Cir. 2004) ............................ 14

*Vielma v. Eureka Co*.
218 F.3d 458 (5th Cir. 2000) ...................................... 15

*Walden v. Fiore*
134 S.Ct. 1115 (2104) ................................................ 19

*Whitaker v. City of Houston*,
963 F.2d 831 (5th Cir. 1992) ............................ 15

## REPLY ARGUMENT

### I. The District Court Erred in Dismissing the Complaint for Lack of Personal Jurisdiction because Specific Personal Jurisdiction Exists over FGTL

This Court should rule in favor of New World International, Inc. and National Auto Parts, Inc. (hereafter jointly "New World") because the response of Ford Global Technologies, LLC (FGTL) misinterprets this Court's case law and is inconsistent with underlying principles that control the personal jurisdiction inquiry. When the correct rules of law are applied to the exclusive licensing agreement, it is clear that specific personal jurisdiction exists over FGTL.

#### A. The Continuing Obligations of FGTL in the Exclusive License Agreement are Sufficient to Establish Personal Jurisdiction over FGTL under this Court's Case Law

FGTL argues that the "continuing obligations" required for a finding of personal jurisdiction only can be satisfied by a "combination of factors" as compiled by FGTL. That is not a correct interpretation of this Court's or the Supreme Court's case law as discussed below.

In *Burger King Corporation v. Rudzewicz*, 471 U.S. 462 (1985), the Supreme Court explained that the jurisdictional "purposeful availment" requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, [citation omitted], or of the 'unilateral activity of another party or a third person.'" *Id.* at 475. The Court explained that the

requirement is satisfied when a defendant "has created 'continuing obligations' between himself and residents of the forum…." *Id.* at 476.

In *Akro v. Luker*, 45 F.3d 1541 (Fed. Cir. 1995), this Court held that the "continuing obligations" requirement was satisfied because the Defendant entered into an exclusive license agreement with a forum resident. The exclusivity of the license agreement "created continuing obligations" between the defendant and its licensee and "eliminate[d] any possibility of [the defendant] entering into any type of licensing arrangement" with the plaintiff. *Id.* at 1546.

In *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.,* 148 F.3d 1355 (Fed. Cir. 1998), this Court held that personal jurisdiction may not be based on cease and desist letters sent into the forum "without more," *id.* at 1360, and then in *Breckenridge Pharmaceutical v. Metabolite*, 444 F.3d 1356 (Fed. Cir., 2006), this Court explained what would satisfy the "more" activities requirement when the case involved a license agreement or an attempt at licensing.

Citing *Hildebrand v. Steck Mfg. Co.,* 279 F.3d 1351 (Fed. Cir. 2002), this Court explained that personal jurisdiction was absent because the defendant only had *attempted* to negotiate a license agreement and that the defendant lacked "a binding obligation in the forum." *Id.* at 1356. Citing *Red Wing Shoe*, *supra*, this Court explained that because the defendant had no relationship with its non-exclusive licensees "beyond the receipt of royalty income," the forum activities of the

defendant's licensees "were essentially 'unilateral' and could not be attributed to the defendant." 444 F.3d at 1364.

This Court then cited and discussed two cases where personal jurisdiction existed due to continuing obligations arising from an exclusive licensing agreement. In *Akro*, (discussed *supra*), this Court found continuing obligations because the defendant licensor had obligated himself to "defend and pursue any infringements against his patent." 444 F.3d at 1364. This Court stated "[b]ecause the license agreement in *Akro obligated the defendant beyond the mere receipt of royalty income*, we found *Akro* distinguishable from *Red Wing Shoe.*" *Id.* at 1365. (emphasis added). Regarding the second case, *Genetic Implant Systems v. CoreVent Corp.,* 123 F.3d 1455 (Fed. Cir. 1997), this Court stated "[w]e noted that, as in *Akro,* the agreement between the patentee and distributor in *Genetic Implant* created a relationship beyond the payment of royalties" and "[a]lthough the defendant retained the sole right to pursue patent infringement claims, the defendant agreed to indemnify the distributor for liability arising from any third party patent infringement action related to the distributor's sale, use, or making of the covered products, and authorized the distributor to use its trademarks in marketing and distribution." 444 F.3d at 1365.

The above case law indicates that when (1) the defendant has sent cease and desist letters to the plaintiff in the forum and (2) the defendant has entered into an

exclusive licensing agreement with an entity doing business in the forum, the something "more" requirement for personal jurisdiction is satisfied if the agreement (3) creates a relationship with the licensee beyond the receipt of royalty income such as (4) a continuing indemnity and/or enforcement obligation between the licensor and licensee. Such a continuing obligation necessarily means that the contact with the forum is "purposeful" and not "random," "fortuitous," "attenuated," or the result of the "unilateral activity of another party or a third person.'" *Burger King Corporation, supra,* at 475, 476.

FGTL's argument that it takes a "combination of factors" to establish personal jurisdiction is wrong and finds no support in the case law. Indeed, this Court states in *Breckenridge* that "our case law requires that the license agreement contemplate a relationship beyond royalty or cross-licensing payment, *such as* granting both parties the right to litigate infringement cases *or* granting the licensor the right to exercise control over the licensee's sales or marketing activities." *Id.* at 1366. (emphasis added). Although this Court's case law mentions various obligations and activities that make up the relationship in each case,[1] the cases do not require that

[1] There would be no reason for the Court not to mention all the factors that make up the relationship. However, simply because the court mentions all the factors it does not follow that all these factors mentioned are necessary to a finding of a continuing obligation.

any certain number of factors exist beyond something that creates a continuing obligation by the licensor to the licensee.

FGTL's arguments to the contrary lack merit. FGTL attempts to dismiss the importance of the indemnity obligation agreement in *Genetic Implant* by arguing that it was "mentioned in exactly one half of one sentence in the Court's six paragraph discussion." *See* FGTL Br., p. 17. However, the relative importance of a continuing obligation obviously should not be determined by comparing the number of words it takes to state the obligation with the number of words or paragraphs contained in the overall discussion. In any event, FGTL cites no authority for this argument.

FGTL argues that "other actions by the patent holder—not the indemnity agreement—drove the Court's personal-jurisdiction holding." *See* FGTL Br., p. 18. FGTL's speculation is not persuasive. FGTL mentions the patent holder's efforts to develop a market and customer base in the forum, but fails to explain how such activities are necessary to a finding the patent holder entered into a continuing obligation with the licensee in the forum. FGTL also mentions the patentee's promise to maintain patents, prosecute patent applications, and the licensing of trademarks, but fails to explain how these activities are necessary to a finding of personal jurisdiction. Indeed, in *Akro, supra* (that FGTL conspicuously ignores discussing), none of these factors were present, and yet this Court found that a *single*

continuing obligation existed that created personal jurisdiction (to "defend and pursue any infringements against his patent."). Therefore, FGTL's argument that personal jurisdiction must be based on a "combination of factors" as listed by FGTL and cannot be based on cease and desist letters coupled with a continuing obligation in an exclusive licensing agreement is inconsistent with this Court's case law.

FGTL seeks to distinguish *Genetic Implant* on the basis that FGTL does not sell the patented parts in Texas, FGTL does not license trademarks, and FGTL does not do marketing. This argument misses the point. As stated above, none of these activities are necessary for a finding of personal jurisdiction. Further, what is important is that FGTL owns the putative patent rights and has exclusively licensed these rights to LKQ, an entity doing business regularly in Texas. The exclusive putative patent rights prevent New World from licensing the rights or selling the accused products without fear of a lawsuit for alleged patent infringement.

FGTL argues that FGTL's exclusive license agreement with LKQ is not as exclusive as the one in *Genetic Implant*. That is incorrect as a practical matter. As explained in *Akro*, the significance of an exclusive licensing agreement is that it "eliminates any possibility" of the licensor entering into any type of licensing arrangement with the plaintiff. *Id.* at 1546. The FGTL/LKQ exclusive licensing agreement "eliminated any possibility" that FGTL also would license New World, a fact communicated by FGTL to New World. (Appx60). Further, an exclusive

license agreement typically contains language to maintain exclusivity and to protect the interests of the exclusive licensee. This language usually creates a continuing obligation by the licensor as it did in *Akro, Genetic Implant*, and *Breckenridge*, and as it did in the instant case, discussed *infra*.

FGTL characterizes New World's argument as an "indemnity-always-creates-jurisdiction" rule, FGTL Br., p. 19, but New World's argument is that cease and desist letters coupled with the "something more" of a continuing obligation by the licensor in an exclusive license agreement creates personal jurisdiction. And in this case, there are at least two continuing obligations by FGTL in the exclusive licensing agreement – the indemnity agreement and the enforcement obligations (discussed below) that are sufficient, either alone or together, to satisfy the "continuing obligation" requirement for personal jurisdiction.

FGTL argues that personal jurisdiction in *Lumber Liquidators Leasing, LLC v. Sequoia Floorings, Inc.*, No. 3:13-cv-313, 2014 WL 272401 (E.D. Va. Jan. 24, 2014) was based on a multitude of factors and not just an indemnity agreement. FGTL's "multitude of factors" argument fails for the same reason as discussed above. Further, FGTL is unable to effectively respond to the *Lumber Liquidators* statement "[c]ourts in this and other districts have determined that indemnification agreements are sufficient to warrant personal jurisdiction over a nonresident defendant." *Id.* at *9. The case of *Joseph v. Apache Stainless Equipment Company*,

1999 WL 301703 (E.D. La. May 12, 1999), cited in support of the statement, provides "[defendant] could have reasonably anticipated being haled into court in Louisiana after having executed the indemnification agreement." *Id.* at *9. FGTL fails to address *Joseph*.

In sum, the cease and desist letters sent by FGTL to New World coupled with the "something more" of FGTL's continuing obligations in the exclusive license agreement establish personal jurisdiction. A "combination of factors" as argued by FGTL is not necessary. FGTL's two continuing obligations of indemnity and enforcement (discussed below) are sufficient, either alone or together, to satisfy the "continuing obligation" requirement for personal jurisdiction.

### B. FGTL's Continuing Enforcement Obligations in the Exclusive License Agreement with LKQ Establish Personal Jurisdiction

Paragraph 8.1 of the exclusive license agreement states FGTL "... *shall not unreasonably refuse* a request by LKQ to enforce the Ford Design Patents...." (emphasis added) (Appx49). As explained in New World's principal brief, this language created a continuing obligation in FGTL that satisfied this Court's test for personal jurisdiction.[2]

FGTL first argues that this language did not create the necessary continuing obligation in FGTL because it did not exactly track the language in *Breckenridge*

[2] It should be noted that the last sentence of paragraph 8.1 also creates a continuing obligation from FGTL to LKQ.

that granted *both* parties the right to litigate infringement cases. *See* FGTL Br., p. 20. This argument is easily dismissed.[3] In *Akro, supra*, the exclusive license agreement did not grant both parties the right to litigate infringement cases (the licensor obligated itself "to defend and pursue any infringement against" the '602 patent, 444 F.3d at 1364) and yet this Court found that personal jurisdiction existed. The fatal flaw in FGTL's approach is that FGTL improperly focuses solely on the *exact* language contained in previous cases and does not consider the underlying legal principles that this type of enforcement language triggers.

Second, FGTL argues that the language *shall not unreasonably refuse* does not create a binding obligation. This argument also is easily dismissed. FGTL concedes that it "must weigh each LKQ request for enforcement…." FGTL Br., p. 23. Further, the *shall not unreasonably refuse* language brings the obligation well within the holding of *Breckenridge*.[4] Indeed, as explained in New World's principal brief

---

[3] While not necessary to the personal jurisdiction analysis in this case, contrary to FGTL's argument, the exclusive licensee agreement contains mutual patent enforcement rights and obligations that include licensee LKQ. For example, *see* paragraphs 8.1 and 10.1 discussed in New World's principal brief at pages 24-26. Additionally, FGTL's argument that the license does not give LKQ the right to sue for patent infringement with FGTL's written consent is incorrect. Paragraph 8.2 states in relevant part "[w]ith Ford 's prior written consent, LKQ may handle such a claim, demand or suit in a manner agreed upon by the parties." (Appx50). If LKQ is sued over a design that LKQ claims to be the exclusive patent licensee of, certainly a potential way of handling the claim would be to file a counterclaim for patent infringement if appropriate and if agreed to in writing by FGTL.

[4] FGTL does not attempt to address New World's statement or supporting authorities in footnote two of its principal brief that "good faith and reasonableness are

at pages 24 and 25, the obligation is greater than that in *Breckenridge* to "discuss in good faith" and "cooperate reasonably in any enforcement actions."

FGTL argues that *Breckenridge* is distinguishable because the patentee and licensee "actively coordinated" the prosecution of infringement claims in the forum state. The distinction is not meaningful.[5] The reason the patentee and licensee "actively coordinated" prosecution in *Breckenridge* is because they had agreed to "cooperate reasonably in any enforcement actions," and it was the agreement to cooperate itself that constituted the continuing obligation. Similarly, in the instant case, FGTL has the continuing obligation to "not unreasonably refuse a request by LKQ to enforce the Ford Design Patents." FGTL's lawsuit against New World (*Ford Global Technologies, LLC v. New World International, Inc., Auto Lighthouse Plus, LLC, and United Commerce Centers, Inc*., Case Number 2:15cv10394 filed January 29, 2015 in the United States District Court for the Eastern District of Michigan) (Appx36) indicates that FGTL is in fact attempting to enforce its putative design patents. But it is FGTL's commitment to *not unreasonably refuse* that creates

---

recognized and enforceable standards in Michigan." Rather, FGTL cites Restatement (Second) of Contract sections in support of its argument that Ford's ability to decline enforcement "on any commercially reasonable basis" means that it has no binding obligation. Even accepting *arguendo* FGTL's argument, the standard is still one of reasonableness, which was found by this Court to create a continuing obligation in *Breckenridge.*

[5] The distinction also is not true as the allegations and evidence of record indicates that FGTL and LKQ are coordinating on enforcement efforts. (Appx36, Appx37, Appx38; Appx60; Appx62 [cc: to Justin Jude and Vic Casini with LKQ]; Appx84).

the relevant continuing obligation and results in personal jurisdiction. Finally, FGTL appears to argue that the continuing obligation is relevant only if there is an obligation to enforce the patents in Texas. FGTL cites no authority holding that the continuing obligation is relevant only if it requires enforcement proceedings to be commenced in the forum state.

### C. New World's Personal Jurisdiction Argument is Solidly Supported by Supreme Court and Federal Circuit Authority

Likely realizing that its argument fails if Supreme Court and Federal Circuit authority properly is applied to this case, FGTL resorts to three alternative approaches: (1) mischaracterize New World's argument; (2) mischaracterize the relevant case law; and (3) argue that the relevant case law should be overturned. Each approach is easily rejected.

FGTL states that New World's argument is that *any* continuing obligation beyond royalty payments is sufficient. That is a mischaracterization. The continuing obligations pointed out by New World – related to indemnity and enforcement – are the type of continuing obligations that this Court has held to establish personal jurisdiction as discussed above. FGTL also argues that New World's argument does not require the licensing provisions to "in some identifiable way 'relate to' enforcement of those patents in the forum." *Avocent*, 552 F.3d at 1334 (citation omitted). That is incorrect. In *Avocent*, this Court expressly stated that the "entering

into an exclusive license agreement or other undertaking which imposes enforcement obligations with a party residing or regularly doing business in the forum" is an "[example[] of these 'other activities'" that "relate to the enforcement or the defense of the validity of the relevant patents." *Id.* at 1334. And as explained in *Akro* at 1546, the significance of an exclusive patent licensing agreement is that it eliminates any possibility that others can sell the accused products without fear that the licensor and/or licensee will seek to enforce the patent though a patent infringement lawsuit. Finally, an indemnity agreement whereby FGTL agrees to indemnify LKQ in the event a third party sues LKQ for selling the patented products relates both to the defense of the patent rights and enforcement and protection of LKQ's rights to enjoy exclusive patentee licensee rights and to continue to sell the patented products.

FGTL then mischaracterizes this Court's case law by stating that it does not involve the "sort of arms-length relationship between licensor and licensee that Ford Global and LKQ have," but rather requires "something far closer and far-more integrated." *See* FGTL Br. p. 24. FGTL contradicts its own argument by pointing out in the very next paragraph that the jurisdictional inquiry requires a "close examination of the license agreement," and not the overall nature of the relationship. It is the *exclusive license agreement* that should be closely examined to determine whether there are continuing obligations *such as* indemnity agreements or

enforcement obligations that will establish personal jurisdiction under this Court's case law.

FGTL argues that New World's argument runs afoul of the Supreme Court's admonition that personal jurisdiction cannot be based on the unilateral activity of a third party. This argument is frivolous. FGTL's agreements regarding indemnity and enforcement to a licensee that is doing business in the forum clearly are not unilateral agreements by LKQ.

FGTL argues that *Genetic Implant* has been abrogated by *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011) and *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014) regarding the distinction between a licensee that resides in the forum versus one that does business in the forum. Both of these cases involve principles related to *general* personal jurisdiction and not to *specific* personal jurisdiction. As discussed above, in the specific jurisdiction inquiry in a declaratory judgment action, when the patentee has sent cease and desist letters into the forum, the only remaining question is whether "something more" has occurred that will trigger jurisdiction. The "something more" can be continuing obligations in an exclusive license agreement made with someone that is selling the patented products in the forum. It is the fact that the licensee is selling patented products in the forum that connects the patent licensors continuing obligations to the forum and not whether the licensee is a resident of the forum. As stated in *Genetic Implant, supra*

at 1459, the "distinction between in-state and out-of-state distributors is not tenable ... [The distributor] is present in Washington in the sense that it promotes and sells [the] patented products in the state…." Therefore, the analysis in *Goodyear* and *Daimler* is not applicable to a specific personal jurisdiction inquiry involving an exclusive licensing agreement and continuing obligations by the licensor.

### D. The Reconsideration Motion was Improperly Denied

FGTL argues that "New World improperly includes in its primary personal-jurisdiction argument two provisions of the LKQ's license that it claims prove a continuing relationship related to patent enforcement in Texas. *See* New World Br. 26 (citing Appx46 (§ 2.2) and Appx51 (§10.1))." FGTL Br., p. 30. That is incorrect. The cited provisions are contained in the exclusive license agreement that was made of record and are just further support for the argument timely made by New World in its Sur-Reply (Dist. Ct. Dkt. 36-1, p. 2) that the license agreement contemplates a relationship beyond mere royalty payments.

## II. The District Court Abused its Discretion in Declining New World's Motion to Amend the Complaint because there was no Undue Delay

### A. There was no Undue Delay by New World

FGTL begins its response by citing *Smith v. EMC Corps*, 393 F.3d 590 (5th Cir. 2004) for the proposition that district courts in the Fifth Circuit "are discouraged from granting motions to amend after entering final judgments." *Id.* at 598. *Smith*

is not applicable to this case. *Smith* involved a final judgment after a *merits* ruling, not a motion to dismiss for lack of personal jurisdiction, and the authority upon which the statement is based, *Vielma v. Eureka Co*., 218 F.3d 458 (5th Cir.2000), also involved a final judgment after a ruling on the merits.

Every other case cited by FGTL also involves a ruling *on the merits* with prejudice. *See Whitaker v. City of Houston*, 963 F.2d 831, 833 (5th Cir. 1992) ("the district court's order dismissing Whitaker's complaint … ended "the litigation on the merits…."); *Briddle v. Scott*, 63 F.3d 364, 379 (5th Cir. 1995) (judgment on the merits); *Freeman v. Continental Gin Co*., 381 F.2d 459 (5th Cir. 1967) (summary judgment ruling on the merits); *Rosenzweig v. Azurix Corp*., 332 F.3d 854 (5th Cir., 2003) (dismissal on the merits with prejudice). Significantly, FGTL does not cite a single case involving the denial of a motion to amend following an order for dismissal for lack of personal jurisdiction. As explained in New World's principal brief at page 37, the policy considerations are different in cases dismissed with prejudice on the merits than in cases dismissed without prejudice based on lack of personal jurisdiction.

FGTL attempts to distinguish *Dussouy v. Gulf Coast Investment Corp*., 660 F.2d 594 (5th Cir. 1981), but FGTL mischaracterizes the case and ignores the applicability of the legal principles involved. The court in *Dussouy* explained that although "Dussouy was aware of the facts alleged in the proposed amendment from

the beginning …. Dussouy was not aware that those facts were necessary to his claim." *Id.* at 599. The important legal principle from *Dussouy* is that "where the failure to include in the complaint a known theory of the case arises not from an attempt to gain tactical advantages but from a reasonable belief that the theory is unnecessary to the case, denial of leave to amend is inappropriate." *Id.* Stated differently, when the failure to allege known facts is based on a reasonable belief that the facts are unnecessary to the claim, then the delay in alleging the facts is not *undue* delay and denial of leave to amend is inappropriate.

In its effort to distinguish *Dussouy*, FGTL mischaracterizes the case. FGTL states "[u]nlike *Dussouy*, New World was not omitting assertions it thought were legally *irrelevant*; New World just thought its existing assertions were enough." (emphasis added) P. 36. That is a mischaracterization of *Dussouy*. The plaintiff in *Dussouy* did not believe that the omitted facts were *irrelevant* (as stated by FGTL), rather, as stated by the court "Dussouy was not aware that those facts *were necessary* to his claim." That is the same reasonable belief possessed by New World.

As discussed in detail above, when relevant authority is properly applied to the exclusive license agreement in this case, it is clear that personal jurisdiction exists. It also is clear that when personal jurisdiction exists due to a continuing relationship with an exclusive licensee, there is no need to allege acts of extra-judicial enforcement. *See Google Inc. v. Rockstar Consortium U.S. LP*, No. C 13-

5933, *7 (N.D. Cal., August 20, 2014). Therefore, just as the plaintiff in *Dussouy*, New World was reasonably justified in believing that the allegations of extra-judicial enforcement were unnecessary for personal jurisdiction.

The only way FGTL's continuing obligations in the exclusive licensing agreement do not result in personal jurisdiction is if this Court changes the law as requested by FGTL above or makes a dramatic change in its analytical approach. But such a change would not affect the reasonableness of New World's belief at the time that factual allegations of extra-judicial enforcement were not necessary to establish personal jurisdiction. For that reason, under *Dussouy,* the delay in making the extra-judicial enforcement allegations in the proposed amended complaint was not *undue* delay. And since there was no undue delay or other reason for the district court to deny New World's motion for leave to file an amended complaint, under the circumstances of this case, the denial constituted an abuse of discretion. *See Dussouy, supra*, at 600 ("The discretion of the trial court simply was not broad enough to allow denial of the motion to amend in the circumstances this case presents.").[6]

[6] FGTL states "New World closes by asserting a new justification for not alleging extrajudicial patent enforcement before the District Court's initial dismissal order: it did not have enough pages in its opposition and sur-reply to cover it." FGTL Br., p. 37. New World made no such argument or assertion. New World was providing this Court with an explanation of the briefing process below and the context in which the district court made its initial determination on the effect of the exclusive license agreement.

### B. The Proposed Amended Complaint is Not Futile

FGTL characterizes the allegations of extrajudicial patent enforcement as attempts to settle. But FGTL fails to address two arguments made by New World indicating that the activities went well beyond the type of cease and desist settlement efforts that alone will not support personal jurisdiction. First, the enforcement efforts alleged were not mere settlement efforts by FGTL alone, but were joint enforcement activities done by FGTL and LKQ working in coordination with each other. FGTL does not deny the allegations. As explained by New World in its principal brief at pages 41, 42, such coordination is relevant to establishing personal jurisdiction under this Court's holding in *Breckenridge*. FGTL fails to respond to this argument.

Second, FGTL fails to effectively address New World's allegations and argument that the coordinated activities were made to protect the validity of the putative design patents by attempting to eliminate the standing of the Automotive Body Parts Association (ABPA) to challenge the validity and enforceability of the FGTL design patents in a separate case brought by the ABPA. FGTL does not deny the allegations. In *Avocent Huntsville Corp. v. Aten Intern. Co., Ltd.*, 552 F.3d 1324, 1336 (Fed. Cir. 2008), this Court stated "if the defendant patentee purposefully directs activities at the forum which relate in some material way to the enforcement

*or the defense of the patent*, those activities may suffice to support specific jurisdiction." (emphasis added).

FGTL argues that the extrajudicial enforcement efforts regarding suppliers are not relevant because there is no record proof that a communication occurred to a supplier where the communication from FGTL or LKQ to the supplier was made into Texas. This argument fails for two reasons. First, the undisputed allegations are that LKQ communicated with parts suppliers that have offices and distribution facilities in Texas. There is no record evidence that the communications were *not* made into Texas and a reasonable inference from the allegations is that they were, and/or that the communications were directed into Texas as intended by LKQ. *See Silent Drive, supra*, at 1201 (pleadings are to be construed in the light most favorable to New World).

Second, as explained in New World's principal brief at pages 45-47, these allegations are sufficient to allege extra-judicial enforcement efforts directed toward the forum state. Communications directed at the forum are sufficient under Federal Circuit and United States Supreme Court law to establish personal jurisdiction, a point conceded by FGTL with its statement "*Walden* is thus consistent with *Radio Systems* and *Avocent*, which both require the extrajudicial-enforcement communications to be directed at the forum." FGTL Br., p. 42.

Finally, FGTL argues that New World does not allege any extrajudicial patent enforcement by FGTL. That is incorrect. New World alleges “LKQ's actions in contacting the suppliers to prevent the suppliers from selling patented parts to Plaintiffs, including the parts covered by the Patents-in-Suit, was done in cooperation with FGTL and under LKQ's joint continuing contractual obligations with FGTL in the State of Texas.” (Appx38). FGTL does not deny these allegations.

## CONCLUSION AND RELIEF SOUGHT

Based on the arguments and authorities set forth above, the district court erred in dismissing New World's complaint for lack of specific personal jurisdiction, abused its discretion in denying New World's motion for leave to file an amended complaint, and abused its discretion in denying New World's motion for reconsideration regarding the order of dismissal for lack of personal jurisdiction. New World respectfully requests that this Court reverse the order of dismissal for lack of personal jurisdiction, reverse the order denying New World's motion for leave to file an amended complaint, reverse the order denying New World's motion for reconsideration, remand this case to the district court for further proceedings, and grant such other and further relief to which New World may should itself justly entitled.

Respectfully submitted October 21, 2016.

/s/ Robert G. Oake, Jr.
Robert G. Oake, Jr.
Texas Bar No. 15154300
Oake Law Office
825 Market Street, Suite 250
Allen, Texas 75013
Telephone: 214.207.9066
rgo@oake.com

Attorney for Plaintiff-Appellant

CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Federal Rules of Appellate Procedure 32(a)(7)(B). This brief contains 4,967 words, excluding the parts of the brief exempted by the Federal Rules of Appellate Procedure 32(a)(7)(B)(iii).
2. This brief complies with the typeface requirements of Federal Rules of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rules of Appellate Procedure 32(a)(6). This brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point Times New Roman font.

/s/ Robert G. Oake, Jr.
Robert G. Oake, Jr.
Attorney for Plaintiff-Appellant
October 21, 2016

**FORM 30. Certificate of Service**

## UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

# CERTIFICATE OF SERVICE

I certify that I served a copy on counsel of record on October 21, 2016
by:

- ☐ US mail
- ☐ Fax
- ☐ Hand
- ☒ Electronic Means (by email or CM/ECF)

Robert G. Oake, Jr.
Name of Counsel

s/ Robert G. Oake, Jr.
Signature of Counsel

Law Firm: Oake Law Office

Address: 825 Market Street, Suite 250

City, State, ZIP: Allen, Texas 75013

Telephone Number: 214.207.9066

FAX Number: 214.383.0865

E-mail Address: rgo@oake.com

NOTE: For attorneys filing documents electronically, the name of the filer under whose log-in and password a document is submitted must be preceded by an "/s/" and typed in the space where the signature would otherwise appear. Graphic and other electronic signatures are discouraged.